IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BERNADINE RIDING,          )
    Plaintiff,          )
              )
v.          )          CIVIL ACTION NO. 17-00308-N
              )
NANCY A. BERRYHILL, *Acting*          )
*Commissioner of Social Security*,          )
    Defendant.          )

## MEMORANDUM OPINION AND ORDER

Plaintiff Bernadine Riding brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*. Upon consideration of the parties' briefs (Docs. 13, 14) and those portions of the administrative record (Doc. 12) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[1]

## I.  *Background*

On January 17, 2014, Riding filed an application for SSI with the Social

_____

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73.  (*See* Docs. 17, 18).  With the Court's consent, the parties waived the opportunity for oral argument.  (*See* Docs. 16, 19).

Security Administration ("SSA"), alleging disability beginning April 1, 2013.[2] After her application was initially denied, Riding requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. The hearing was held on January 6, 2016. On June 1, 2016, the ALJ issued an unfavorable decision on Riding's application, finding her "not disabled" under the Social Security Act and thus not entitled to benefits. (*See* R. 18 – 29).

The Commissioner's decision on Riding's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied Riding's request for review of the ALJ's decision on May 9, 2017. (R. 1 – 5). Riding subsequently filed this action under § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* (Doc. 1); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir.

---

[2] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing 20 C.F.R. § 416.202–03 (2005)).

2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.     *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v.*

*Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3]

---

[3] Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Generally, claims of error not raised in the district court are deemed waived. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190

However, the "substantial evidence" "standard of review applies only to findings of fact.    No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted).  *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ...  As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)).  This Court "conduct[s] 'an exacting examination' of these factors."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).  "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260   (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).  *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

---

F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for…SSI requires that the claimant be disabled. 42 U.S.C. §…1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §…1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the

---

[5] The undersigned will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the

ALJ. *See id.* at 1324.

### III. *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Riding had not engaged in substantial gainful activity since her SSI application date, January 17, 2014. (R. 23). At Step Two, the ALJ determined that Riding had the "severe impairment" of status post fracture of the right femur with vascular necrosis. (R. 23). At Step Three, the ALJ found that Riding did not have an impairment or combination of impairments that met or equaled the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 23).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her

prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Riding had the RFC "to perform light work as defined in 20 CFR 416.967(b)[,[6]] except she "should not climb ladders, ropes or scaffolds[;] can occasionally climb stairs, stoop, kneel, crouch or crawl[;] should not perform work at unprotected heights[; and] should avoid concentrated exposure to hazards in the workplace." (R. 24 – 27).

Based on this RFC, the ALJ determined that Riding was unable to perform past relevant work as a cashier, attendant, or housekeeper. (R. 27). At Step Five, after taking testimony from a vocational expert, the ALJ found that there exist a significant number of jobs in the national economy that Riding could perform given her RFC, age, education, and work experience. (R. 28). Thus, the ALJ found that Riding was not disabled under the Social Security Act. (R. 29).

## IV. *Analysis*

### A. **First Claim of Error – Standing & Walking for Light Work**

At Step Four the ALJ determined that Riding could perform the full range of standing and walking required for "light work" as defined in 20 C.F.R § 416.967(b).[7]

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. § 416.967.

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or

Under Social Security Ruling 83-10, this means that Riding was determined capable of, *inter alia*, "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983) Riding argues that this RFC finding is not supported by substantial evidence. This is due, Riding claims, to several errors the ALJ committed in considering the record evidence.

Evidence considered by the Commissioner in making a disability determination may include medical opinions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the

---

standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.

Riding first argues the ALJ erroneously deemed the state agency disability determination to have been completed entirely by "medical consultants." (R. 27). As Riding correctly points out, while the state agency mental assessment was made by a physician (*see* R. 58), the physical assessment was made by a "single decisionmaker," or "SDM" (*see* R. 61), a designation which "connotes no medical credentials." *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871 (11th Cir. 2012) (per curiam) (unpublished) (citing 20 C.F.R. § 404.906(a), (b)(2)). As such, an SDM's decision is not a medical opinion entitled to any weight. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (per curiam) (unpublished) ("[A]s Cooper correctly notes, the ALJ mistakenly referred to the SDM as a doctor and should not have given any weight to her opinion because she was merely an

SDM…").

It appears that the ALJ improperly assigned at least some weight to the SDM's physical assessment. In the portion of his opinion discussing "the assessment made by the state agency medical consultants," the ALJ, without differentiating between the mental and physical portions, labeled the assessment as "the state agency medical consultant's opinions" and found them "not completely persuasive" (indicating that at least some weight was assigned) because the ALJ had "concluded that the claimant's impairments have become more severe than initially assessed by the state agency medical consultants." (R. 27). Moreover, despite finding the state agency assessments "not completely persuasive," the ALJ specifically noted the SDM's determination that Riding could "stand and walk six hours and sit six hours out of an eight-hour workday" (R. 27 (citing SSA Ex. 2A)), a finding that is reflected in the ALJ's RFC assessment, *see supra*.

The Commissioner responds that any error the ALJ committed in relying on the SDM's assessment is harmless because other substantial evidence supports the ALJ's physical RFC. *See, e.g.*, *Burgos v. Acting Comm'r of Soc. Sec.*, 705 F. App'x 794, 801 (11th Cir. 2017) (per curiam) (unpublished) ("[A]n error is harmless if it does not affect the Commissioner's ultimate decision." (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).[8] For instance, the ALJ gave "great weight" to the

---

[8] *Compare Cooper*, 521 F. App'x at 807 ("Although, as Cooper correctly notes, the ALJ mistakenly referred to the SDM as a doctor and should not have given any weight to her opinion because she was merely an SDM, any error in this regard was harmless because the ALJ stated that he considered all of the evidence in the record, which also included opinions by Cooper's treating physician and the non-

report of Dr. Eyston Hunte, who conducted a consultative physical examination of Riding on July 21, 2014. (R. 26).[9] The ALJ summarized Dr. Hunte's report as follows:

> [Dr. Hunte's] consultative evaluation…revealed that the claimant fell in April 2013 and sustained a fracture of the right hip. The claimant underwent a total hip replacement. The claimant has difficulties getting around because of constant pain in the right hip. The claimant

---

examining physician, both of whom were medical doctors and there is nothing to indicate that the opinion of the SDM was anything more than cumulative of other evidence, let alone dispositive."), *with Siverio*, 461 F. App'x at 872 ("As an SDM with no apparent medical credential, Martin was not an acceptable medical source. Nonetheless, the ALJ mistakenly treated Martin's opinion that Siverio could perform medium work as the 'expert opinion' of a 'DDS physician [ ],' 'State Agency physician[ ],' and 'DDS medical consultant[ ].' []This was not a harmless error. The ALJ's opinion shows not only that the ALJ labored under the mistaken belief that Martin's RFC assessment had been authored by a physician, but also that he gave Martin's RFC assessment "significant weight." The remaining record evidence does not provide substantial evidence for the finding that Siverio was capable of performing medium work. Other than Martin's opinion, which the ALJ erroneously relied upon as a medical opinion, there is nothing in the record that could have reasonably led the ALJ to conclude that Siverio could occasionally lift fifty pounds and frequently lift twenty-five pounds, and thus perform medium work. Thus, it appears it was primarily on the basis of Martin's RFC assessment that the ALJ concluded that Siverio could perform medium work. Because substantial evidence does not support this finding, we reverse and remand for reconsideration of Siverio's RFC.").

[9] The ALJ referred to Dr. Hunte's report as an "opinion" when assigning it "great weight." (R. 26). Riding takes exception to this characterization, asserting that "Dr. Hunte did not directly state in his report any opinion regarding the physical capabilities of Ms. Riding" and that "[n]othing in Dr. Hunte's report suggests that Ms. Riding could stand or walk for six hours per eight-hour workday." (Doc. 13 at 9). Upon review, it is at least debatable whether Dr. Hunte's report (R. 209 – 213) was properly deemed a "medical opinion" as that term is defined by the Social Security regulations. *See Winschel*, 631 F.3d at 1179. However, unlike the SDM, Dr. Hunte is a medical professional, and his report was still evidence the ALJ was required to consider in formulating the RFC, regardless of whether it is also a "medical opinion." *Cf. Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (an ALJ must "sufficiently explain[] the weight…given to obviously probative exhibits" (quotation omitted)).

had numbness in the right arm complaining [sic] a burning sensation in her feet. There was no swelling, redness or heat. She had normal sensation of grip strength on the left and right. There was no muscle atrophy. Her gait was erect and she walked normally. The claimant could squat, toe, and heel walk normally. The claimant had a slight decreased range of motion on abduction of the right hip with pain and tenderness. The claimant was able to dress and undress for the examination. She was able to ambulate normally. The claimant did not require the use of an assistive device. She was able to perform her activities of daily living. She was not able to drive. The claimant was diagnosed with pain in the right joint involving the pelvic region and thigh, status post right hip fracture, post total hip replacement, and a slight decreased range of motion of the right hip…

(R. 26 (citing SSA Ex. 3F, R. 209 – 213)).

Contrary to Riding's assertion, nothing in Dr. Hunte's report forecloses the determination that she is capable of standing and walking for six hours in an eight-hour workday. Riding claims that the ALJ neglected to mention other relevant portions of Dr. Hunte's report: that her right thigh was an inch shorter than her left thigh; that her right leg was atrophied and smaller than her left leg; that she only had 4/5 strength in both legs;[10] and that she had limited range of motion in her right hip, along with hip pain and tenderness. (Doc. 13 at 9 (citing R. 212)). She argues that Dr. Hunte's "references to muscle atrophy, limited range of motion of the hip and groin area pain describe an individual who would be unable to engage in prolonged standing and walking" and that "it would seem necessary for the ALJ to discount the report of Dr. Hunte" in order to find Riding capable of the standing and walking requirements for light work. (Doc. 13 at 10). As the Commissioner

---

[10] Riding does not explain the meaning or significance of "4/5 strength," and the ALJ cited this factor as <u>supporting</u> Riding's ability to stand and walk. (*See* R. 25).

correctly points out, however, Dr. Hunte also noted that, in spite of the foregoing observations, Riding's gait was erect; that her ability to squat, toe walk, and heel walk were all normal; that she was able to ambulate normally; and that she did not use an assistive device. (R. 212). Noting that Dr. Hunte's report "was consistent with the majority of the medical record[,]" the ALJ determined from the report that Riding "was able to form activities of daily living independently[,[11]] was able to ambulate and walk erect despite her prior hip replacement[, and] did not require the use of an assistive device for mobility." (R. 26). The ALJ provided a rational interpretation of Dr. Hunte's report, and the Court must defer to that interpretation, even if the report may also be susceptible to Riding's interpretation. *See Winschel*, 631 F.3d at 1178 (courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner" (quotation omitted)); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001),

---

[11] At the beginning of his report, in the section for HIP ("History of Present Illness"), Dr. Hunte noted that Riding "has difficulty doing her [activities of daily living] because she gets pain in the left side of her chest when she bends over to do anything including putting on her shoes." (R. 210). Near the end, in his Physical Capacities Evaluation, Dr. Hunte noted Riding "states that she is able to do her daily activities of living at home." (R. 212). Riding argues that these statements do not support the ALJ's finding that she "was able to form activities of daily living independently" because they are inconsistent, and because neither "are statements of opinion by Dr. Hunte, but rather relate what Ms. Riding told Dr. Hunte." (Doc. 13 at 9). First, the statements are not wholly inconsistent, since Riding could still be "able to do her daily activities of living," but with some "difficulty" when bending over is involved. Second, Riding's own statements that she has some ability to engage in activities of daily living despite her impairments are relevant evidence supporting the ALJ's determination.

*as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Riding also cites to other medical records that she claims further undercut the ALJ's determination on her ability to stand and walk – specifically, a December 8, 2015 examination report by Dr. Robert McGinley, and a January 12, 2016 MRI report by Dr. George Martindale. (*See* Doc. 13 at 11 (citing R. 231 – 232)). Riding is correct that, "[i]n determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner]'s decision." *Chester*, 792 F.2d at 131. However, the Commissioner's decision cannot be reversed for lack of substantial evidence simply because a claimant can cite some contrary evidence in the record.[12] *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." (quotation omitted)); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Lawton*, 431 F. App'x at 833 ("While the record does contain some

---

[12] "To a large extent, [Riding] questions the ALJ's RFC determination based solely on the fact that she *has* [leg and hip impairments]. However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6.

evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence." (citing *Dyer*, 395 F.3d at 1210)); *Dolsak v. Comm'r of Soc. Sec.*, No. 17-14392, 2018 WL 2357519, at *1 n.1 (11th Cir. May 24, 2018) (per curiam) (unpublished) ("Dolsak's arguments that the ALJ did not consider the best evidence in the record amount to a request for us to reweigh the record evidence, which we cannot do." (citing *Winschel*, 631 F.3d at 1178)).

Moreover, those two reports do not substantially undercut the ALJ's standing-and-walking determination. Dr. McGinley's December 8, 2015 report noted that Riding had presented with complaints of pain in her right hip and right foot. The right foot pain was the result of a tarsal navicular fracture that Dr. McGinley had provided treatment for a month prior. Dr. McGinley noted that Riding's foot pain had decreased through her use of a sprain walker, that her tarsal navicular fracture had healed, and that she had no right foot swelling and minimal midtarsal tenderness. Dr. McGinley opined that Riding "may gradually wean from her sprain walker." (R. 231).

Riding told Dr. McGinley that she had been experiencing right groin pain since injuring her right femur 3 years ago, which she claims caused "intermittent limping and 'giving way.'" (R. 231). Dr. McGinley noted that Riding showed "mild pain with right hip rotation," that she had some hardware in her right hip (a compression screw and IM rod), and that she had "what appears to be avascular necrosis involving greater than 50% of the femoral head with early collapse." (R.

231).  Dr. McGinley ordered an MRI of Riding's hip.  (R. 231).  Dr. Martindale subsequently performed the MRI, which revealed "postop changes consistent with internal fixation of a right femoral neck fracture with superimposed changes of avascular necrosis of the right femoral head with the area of avascular necrosis measuring approximately 3 cm."  (R. 232 (all-caps omitted)).  However, Dr. Martindale also noted that "there is no frank collapse/deformity of the femoral head, and that the MRI results were "otherwise unremarkable."  (R. 232 (all-caps omitted)).[13]

The ALJ's decision reflects an adequate consideration of the record medical evidence, and his overall conclusions that "the majority of the medical records" showed Riding was able to "perform activities of daily living independently," was able "to ambulate and walk erect despite her prior hip replacement," and "did not require the use of an assistive device for mobility" are a reasonable assessment of the evidence.  The ALJ also gave some consideration to the fact that Riding apparently attempted to exaggerate her impairments by attending her administrative hearing in a borrowed wheelchair.  (*See* R. 25).  While the ALJ may have improperly given some weight to the opinion of a non-medical source, that error was harmless because other substantial evidence supports the ALJ's decision not to impose any standing and/or walking limitations in Riding's ability to perform light work.  Accordingly, the Court **OVERRULES** Riding's first claim of error.

---

[13] The ALJ expressly discussed these reports in his decision and concluded that "there was no reason why the claimant could not walk."  (*See* R. 25 – 27).

## B.       Second Claim of Error – Consultative Examination

"Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram*, 496 F.3d at 1269.  Generally, remand based on an ALJ's failure to develop the record is appropriate where "evidentiary gaps in the administrative record prevented the ALJ from making a full, fair, and impartial assessment of [a claimant]'s RFC and what jobs he may reasonably pursue."  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1270 (11th Cir. 2015) (per curiam).

Riding argues that the ALJ should have developed the record by ordering a consultative examination to better determine her physical capabilities because there were "no orthopedic or other physical consultative examinations that provided an opinion regarding the amount of standing and/or walking Ms. Riding could perform, given her avascular necrosis and right thigh atrophy."  (Doc. 13 at 12). However, there is no categorical requirement that an RFC determination be supported, in whole or in part, by a medical opinion, *see Fritts v. Colvin,* No. CV 15-00209-N, 2016 WL 3566866, at *7 – 9 (S.D. Ala. June 24, 2016).  Indeed, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion[,]" *Bloodsworth*, 703 F.2d at 1240, and is entitled to rely on his or her own interpretation of the medical evidence in making an RFC determination.  *See*

*Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923–24 (11th Cir. 2007) (per curiam) (unpublished) ("Green argues that once the ALJ decided to discredit Dr. Bryant's evaluation, the record lacked substantial evidence to support a finding that she could perform light work. Dr. Bryant's evaluation, however, was the only evidence that Green produced, other than her own testimony, that refuted the conclusion that she could perform light work. Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of the Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work. The ALJ did not substitute his judgment for that of Dr. Bryant; rather, he determined that Dr. Bryant's opinion was inconsistent with objective medical evidence in the record."); *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (per curiam) (unpublished) ("Contrary to the district court's reasoning, the ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC. *See* 20 C.F.R. § 404.1545(a)(3) ('We will assess your residual functional capacity based on all of the relevant medical and other evidence.'). Indeed, the pertinent regulations state that the ALJ has the responsibility for determining a claimant's RFC. 20 C.F.R. § 404.1546(c).").

The mere lack of a medical opinion to support an RFC is not, in itself, an

"evidentiary gap" indicating a failure to develop the record, and the Court has already determined that substantial record evidence supports the ALJ's determination that Riding could perform the standing and walking requirements of light work with no limitations. Accordingly, Riding's second claim of error is **OVERRULED**.

### C.      Third Claim of Error – Alcoholic Polyneuropathy

Dr. Hunte diagnosed Riding with several new problems at the end of his report, including "alcoholic polyneuropathy." (R. 213). Riding's last claim of error asserts that the ALJ failed to consider this alcoholic polyneuropathy diagnosis at Step Four in his RFC determination. While Riding is correct that the ALJ did not specifically mention this diagnosis in his decision, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision is not a broad rejection which is not enough to enable the Court to conclude that the ALJ considered a claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1211. Here, the record adequately reflects that the ALJ considered alcohol issues in making his decision. At Step Two, the ALJ found that Riding's "medically determinable impairment of alcohol abuse" was non-severe because it "did not cause more than minimal limitation in [her] ability to perform basis work activities" (R. 23), [14] and at Step Four he noted evidence of her "past-history of

_____

[14] Riding suggests the ALJ should have found alcoholic neuropathy to be a severe impairment at Step Two. However, Eleventh Circuit case law is pellucid that, so long as the ALJ finds at least one severe impairment at Step Two, any failure to find additional severe impairments is harmless error at most. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("At step two the ALJ must determine if

alcohol abuse." (R. 27).

The undersigned agrees with the Commissioner that Riding "has failed to assert, much less establish, that her alcoholic polyneuropathy would have changed the RFC assessment or have prevented her from performing the jobs identified at step five of the sequential evaluation process…" (Doc. 14 at 4). This bare diagnosis, made by a one-time examining physician, "does not reveal the extent to which [it] limit[s] a claimant's] ability to work[,]" *Moore*, 405 F.3d at 1213 n.6, and Riding has cited nothing in either Dr. Hunte's report or elsewhere in the record suggesting that alcoholic polyneuropathy had any significant effect on her ability to perform work.[15]

Accordingly, the Court **OVERRULES** Riding's third and final claim of reversible error, and thus finds that the Commissioner's final decision denying her benefits is due to be **AFFIRMED**.

### V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the

_____

the claimant has any severe impairment. This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam) (unpublished) ("[S]tep two requires only a finding of 'at least one' severe impairment to continue on to the later steps." (citing *Jamison,* 814 F.2d at 588)).

[15] Riding argues that this Court found reversible error in a similar situation in *Morgan v. Colvin*, Civil Action No.15-00109-N, 2016 WL 5349467, at *3-4 (S.D. Ala. Sept. 23, 2016). This Court is not bound to follow *Morgan*, *see United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) (en banc) (per curiam) ("The opinion of a district court carries no precedential weight, even within the same district."), and the undersigned is not persuaded that *Morgan*'s reasoning requires reversal here.

Commissioner's final decision issued May 9, 2017, denying Riding's application for SSI is **AFFIRMED** under 42 U.S.C. § 1383(c)(3) and sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 11th day of June 2018.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**